UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LAUREN ABADIE AND BRETT L.
ABADIE

CIVIL ACTION

VERSUS

NO. 18-14112

TARGET CORPORATION OF
MINNESOTA

SECTION "R" (4)

## ORDER AND REASONS

Defendant Target Corporation of Minnesota moves for summary judgment.[1]  Because there are genuine disputes of material fact as to defendant's liability under Louisiana's merchant slip-and-fall statute, the Court denies defendant's motion.

## I.    BACKGROUND

This case arises from a slip-and-fall.  On November 14, 2017, plaintiffs Lauren and Brett Abadie went to the Target store in Houma, Louisiana to pick up a prescription.[2]  According to plaintiffs' complaint, when Mrs. Abadie walked down an aisle near the frozen foods section of the store, she "tripped"

---

[1]    R. Doc. 27.
[2]    R. Doc. 3-6 at 3, ¶ 4 (Complaint).

on a "liquid substance" on the floor, which caused her to fall and injure herself.[3]

In her deposition, Mrs. Abadie described the substance on the floor as "something big" that "looked like melted vanilla ice cream."[4]  She described "multiple puddles" along the aisle, including the one she slipped in.[5]  She stated that the puddle in which she slipped was the size of a "dinner size plate" and that the other puddles were also a "nice size."[6]  She further stated that there were "tracks" from where "buggies or carts" had passed through the puddles, and that the substance was spread over the length of the entire freezer aisle.[7]  She also described the substance as "sticky and melted" and that, although she had no indication of how long it had been on the floor, she believed "it had to be there a while [based on] the consistency of it."[8]

Brett Abadie was also deposed, and he agreed that the substance "looked as if it was ice cream."[9]  Like Mrs. Abadie, he described the substance as "partially dried" and said that "buggies had passed through it," leaving "a

---

[3]   *Id.*
[4]   R. Doc. 31-6 at 25 (Lauren Abadie Deposition at 24:14-15).
[5]   *Id.* at 27 (Lauren Abadie Deposition at 26:17-18).
[6]   *Id.* at 28 (Lauren Abadi Deposition at 27:6-13).
[7]   *Id.* at 28-29 (Lauren Abadie Deposition at 27:15-16, 28:4-14).
[8]   *Id.* at 31 (Lauren Abadie Deposition at 30:16-17, 19).
[9]   R. Doc. 31-7 at 19 (Brett Abadie Deposition at 18:3-4).

couple of prints," including shopping cart tracks and a footprint.[10] Specifically, Mr. Abadie noted that the puddles themselves were liquid, but that the track marks had dried.[11] He stated that the puddles were as large as a "frying pan," but that they varied in size "as if something was possibly dripping."[12]

Several Target employees responded to the scene immediately after the incident. Two of those employees, Jessica McKay and Kim Ann Whatley, were deposed for this suit. Their incident reports and depositions are largely consistent with the Abadies' description of the scene, except that the employees described the puddles as somewhat smaller than the Abadies depicted them. For example, Jessica McKay's incident report states that "[t]here was what appeared to be vanilla ice cream on the floor," but that it was "hard to see," and it "started as a puddle and had smaller spots going down toward the freezer."[13] Nevertheless, at her deposition, McKay testified that "if you were looking for [the substance], it was pretty obvious" and agreed that a person "walking down [the] aisle and looking for spills . . .

---

[10]   *Id.* at 17, 19, 21 (Brett Abadie Deposition at 16:2; 18:4-5; 20:16-25).
[11]   *Id.* at 21 (Brett Abadie Deposition at 20:4-11).
[12]   *Id.* at 19-20 (Brett Abadie Deposition at 18:23-19:4).
[13]   R. Doc. 31-8 at 1 (McKay Statement).

should [have seen]" the spill.[14] Another employee, Kim Ann Whatley, described the puddles as the size of a "dime" or, at most, a "half quarter."[15]

Whatley stated that she "was through the area" two minutes *before* the incident, and did not notice anything on the floor.[16] Whatley testified that, as a Target employee, she was trained to look for "slip, trip, and fall hazards."[17] On November 14, 2017, the date that Mrs. Abadie slipped and fell at Target, Whatley was in training for work in the store's "asset protection" group.[18] She testified that the role of employees in asset protection is "to make sure the store is safe and customers feel safe."[19]

On November 14, 2018, plaintiffs sued Target for damages in the Civil District Court for the Parish of Terrebonne.[20] Defendant removed to this Court on December 21, 2018.[21] Defendant now moves for summary judgment.[22]

---

[14]   *Id.* at 101-102 (McKay Deposition at 101:19-22, 102:18-21).
[15]   R. Doc. 31-10 at 44 (Whatley Deposition at 44:18-20).
[16]   R. Doc. 31-9 at 4 (Whatley Statement); R. Doc. 31-10 at 50 (Whatley Deposition at 50:22-24).
[17]   R. Doc. 31-10 at 16 (Whatley Deposition at 16:4-10).
[18]   R. Doc. 31-10 at 26 (Whatley Deposition at 26:2-3).
[19]   R. Doc. 31-10 at 26 (Whatley Deposition at 26:8-10).
[20]   R. Doc. 3-6 (Complaint).
[21]   R. Doc. 3 (Notice of Removal).
[22]   R. Doc. 27.

## II.    LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.  "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322 (emphasis added))).

## III.  DISCUSSION

### A.  Spoliation

Plaintiff asserts in its response to defendant's motion for summary judgment that Target intentionally destroyed evidence by cleaning the substance from the aisle before it took photographs.[23]  As a sanction for this alleged spoliation, plaintiff contends that it is entitled to a jury instruction stating that the jury may draw an inference that the photographs, if they had been taken before the aisle was cleaned, would have been harmful to defendant.[24]  The Court addresses the spoliation argument at the outset, because "an adverse inference of spoliation can be relevant on summary judgment." *Schreane v. Beemon*, 575 F. App'x 486, 490 (5th Cir. 2014) (quoting *Byrnie v. Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001) ("[A]n inference of spoliation, in combination with some (not insubstantial)

---

[23]    R. Doc. 31 at 15-16.
[24]    *Id.* at 17.

evidence for the plaintiff's cause of action, can allow the plaintiff to survive summary judgment.")).

In diversity cases, federal rather than state evidentiary rules apply to alleged spoliation of evidence. *See Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005). In the U.S. Fifth Circuit, a party alleging spoliation must show "bad faith" or "bad conduct" on the part of the alleged destroyer of evidence. *Id.* If the party asserting spoliation shows bad faith, the Court may impose sanctions—including by instructing the jury to make an inference that the spoiled evidence would have been unfavorable to the responsible party.

Here, plaintiffs' spoliation theory is that Target's employees violated store policy when they failed to take photographs of the site before cleaning it. But failure to follow store procedures, on its own, does not show bad faith. *See, e.g.*, *Castano v. Wal-Mart Stores Texas, LLC*, No. 14-1450, 2015 WL 2180573, at *3 (S.D. Tex. May 7, 2015) (finding that plaintiff "has not provided any evidence that the court could construe as indicative of bad faith" when the defendant failed to follow store procedures, which instructed employees to take photographs, among other things, after a slip and fall). In their brief, plaintiffs do not argue that the employees acted in bad faith when they failed to take photographs. Nor is there any evidence in the record to

support such an argument.  Accordingly, the Court finds that plaintiffs have failed to demonstrate bad faith.  Their spoliation argument lacks merit, and the Court declines to grant plaintiffs the adverse inference they request.

### B.   Constructive Notice

Louisiana statutory law governs the "[b]urden of proof in claims against merchants" when a plaintiff alleges that the merchant's negligence caused the plaintiff to be injured in a fall on the merchant's premises.  *See* La. R.S.  9:2800.6.  The U.S. Fifth Circuit has observed that this "statute 'places a heavy burden of proof on plaintiffs' in slip and fall cases," *Bagley v. Albertsons, Inc.*, 492 F.3d 328, 330 (5th Cir. 2007) (quoting *Jones v. Brookshire Grocery Co.*, 847 So. 2d 43, 48 (La. App. 2 Cir. 2003)), which cannot be met by "[m]ere speculation or suggestion."  *Id.* (quoting *Allen v. Wal-Mart Stores, Inc.*, 850 So. 2d 895, 898 (La. App. 2 Cir. 2003)).

For the purposes of this motion, defendants do not dispute that there was a substance on the floor.  Indeed, based on the evidence presented by the plaintiff, there is at least an issue of fact as to whether a substance existed on the floor at the time plaintiff slipped.  Instead, defendant asserts that plaintiff has failed to carry its burden under La. R.S. 9:2800.6 to produce evidence

showing that Target had notice of the condition.[25]  To show notice, the statute requires that the plaintiff prove that "[t]he merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence." La. R.S. 9:2800.6(B)(2).  Plaintiffs do not argue that Target or its employees created or had actual notice of the condition.  Rather, this dispute turns on whether plaintiffs have created an issue of material fact as to defendant's constructive notice of the condition.

Under the statute, a plaintiff demonstrates constructive notice when "the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." La. R.S. 9:2800.6(C)(1).  The Louisiana Supreme Court has held that, to show constructive notice, a plaintiff has the burden of proving a "temporal

---

[25]    The Court notes that, in its motion, defendant also argues that plaintiffs cannot show that Target failed to exercise reasonable care.  R. Doc. 27-2 at 14-15.  But, defendant conflates the reasonableness standard of constructive notice in § 2800.6(C)(1)—that the condition "would have been discovered if the merchant had exercised reasonable care"—with the requirement of § 2800.6(B)(3) that plaintiff must prove that "[t]he merchant failed to exercise reasonable care." *See id.*  Target's arguments, and the lone case it cites in this section of its brief, go to constructive notice, not the separate reasonableness element. *Id.*; *see Evans v. Winn-Dixie Montgomery, LLC*, 177 So. 3d. 386 (La. App. 5 Cir. 2015).  To succeed on its constructive notice argument, plaintiff must show that Target would have noticed the condition if it had exercised reasonable care.   La. R.S. 2800.6(C)(1).  Accordingly, the Court finds that the reasonableness inquiry is wrapped up in the constructive notice question.

element" that "the condition existed for some time period before the fall." *White v. Wal-Mart Stores, Inc.*, 699 So. 2d 1081, 1084-85 (La. 1997).  If the plaintiff satisfies this "prerequisite," the question is whether "the period of time is sufficiently lengthy that a merchant should have discovered the condition."  *Id.*  A claimant may prove constructive notice by putting forth circumstantial evidence that demonstrates the condition existed for a sufficient period of time that it would have been discovered if the merchant exercised reasonable care. *See, e.g.*, *Woods v. Wal-Mart Louisiana, LLC*, No. 11-1622, 2012 WL 5926178, at *2 (W.D. La. Nov. 26, 2012); *Lacy v. ABC Ins. Co.*, 712 So. 2d 189, 192 (La. App. 4 Cir. 1998).

To satisfy the temporal element, plaintiffs point to Mrs. Abadies' statement that the substance was "melted and sticky,"[26] Mr. Abadies' testimony that it was "partially dried,"[27] and both plaintiffs' statements that the substance had shopping cart tracks running through it.[28]  They also point to testimony that there were several puddles spread along the length of the

---

[26]    R. Doc. 31-6 at 31 (Lauren Abadie Deposition at 19).
[27]    R. Doc. 31-7 at 17 (Brett Abadie Deposition at 16:2-5).
[28]    R. Doc. 31-6 at 29 (Lauren Abadie Deposition at 28:11-14); R. Doc. 31-7 at 10-21 (Brett Abadie Deposition at 19:25-20:1-3).

entire freezer aisle and that some of the puddles were large—at least the size of a plate.[29]

Other courts in slip-and-fall cases have found that similar evidence is enough to create an issue of fact on the temporal element.  For example, in *Johnson v. Wal-Mart Louisiana, LLC*, No. 08-1216, 2009 WL 2447922, at *1 (W.D. La. Aug. 10, 2009), the plaintiff offered testimony that she slipped on a "puddle" that covered a three- to four-foot area.  She also testified that her own cart left tracks in the puddle.  The court found that, "[c]ommon sense and experience suggest the spill was at least viscous enough to hold tracks, and its spreading in a three to four foot circular pattern would have taken some time." *Id.* at *4.  As such, it found that plaintiff had introduced sufficient evidence to create an issue of fact on constructive notice.  *Id.*  In *Woods v. Wal-Mart Louisiana LLC*, 2012 WL 5926178 at *2, the court found that evidence that a spill was "dirty" and had "buggy marks" through it were sufficient under Louisiana law to raise issues of material fact on whether the store had constructive notice.

---

[29]    R. Doc. 31-5 at 103 (McKay Deposition at 103:15-16) (stating that the puddle was "maybe a little bigger than a teacup plate"); R. Doc. 31-6 (Lauren Abadie Deposition at 27:6-19 (stating that the puddle was "about a dinner plate size"); R. Doc. 31-7 at 19 (Brett Abadie Deposition at 18:23-25).

The Court finds that plaintiffs' evidence—including testimony that the melted substance had spread, contained track marks, was sticky, and was at least partially dried—is enough to create an issue of fact as to whether the substance was on the floor for at least a few minutes before her fall.  It is a matter of "common sense" that the substance—whether it came to be on the floor in a melted or un-melted state—would take time to spread out, get run over by carts, dry, and become sticky. *Johnson*, 2009 WL 2447922, at *4.  In other words, plaintiffs have produced evidence to create an issue of fact on the temporal element of constructive notice.

Having found that plaintiffs have produced enough evidence to create an issue of fact on the temporal element, the remaining question is whether the condition "would have been discovered if the merchant had exercised reasonable care." La. R.S. 9:2800.6(C)(1).  Here, it is relevant that a Target employee, Kim Ann Whatley, testified that she traversed the same aisle two minutes before the incident and did not notice anything.[30]  Based on the evidence that the substance was on the floor at least a few minutes before plaintiff's fall, and Whatley's admission that she walked the aisle two minutes

---

[30]    R. Doc. 31-10 at 50-51 (Whatley Deposition at 50:23-51:2); *see also* R. Doc. 31-9 at 4 (Whatley Statement).

before the incident, there is an issue of fact that the substance was on the floor when Whatley passed through the aisle.

Further, plaintiffs have introduced evidence that tends to show that Whatley should have noticed the substance. In particular, Jessica McKay's deposition testimony creates a fact issue on whether Whatley should have noticed the substance in the exercise of reasonable care.  McKay testified that she was employed as a "senior team leader" at Target in 2017.[31]  In this role, she was responsible for opening and closing the store, managing "the entire sales floor," and supervising the store's "team leaders."[32]  McKay arrived at the scene of the incident after several other Target employees, including Whatley, had already responded.[33]  When asked about the substance at her deposition, McKay stated that "if you were looking for [the substance], it was pretty obvious."[34]  McKay also agreed that "if someone [was] walking down [the] aisle and looking for spills, [it was] something they should see."[35]  This evidence is sufficient to create an issue of fact as to whether Whatley should have noticed the substance when she traversed the aisle two minutes before Mrs. Abadie fell.

---

[31]     R. Doc. 31-5 at 17-18 (McKay Deposition at 17:24-18:4).
[32]     *Id.* at 18 (McKay Deposition at 18:1-12).
[33]     *Id.* at 74 (McKay Deposition at 74:7-14).
[34]     *Id.* at 101 (McKay Deposition at 101:19-21).
[35]     *Id.* at 102 (McKay Deposition at 102:18-21).

In sum, plaintiffs have created issues of material fact on constructive notice.  Defendant's motion for summary judgment must be denied.

## IV.   CONCLUSION

Accordingly, the Court DENIES defendant's motion for summary judgment.

New Orleans, Louisiana, this __29th__ day of December, 2020.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE