UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LAUREN ABADIE, ET AL.                              CIVIL ACTION

VERSUS                                             NO. 18-14112

TARGET CORPORATION OF                              SECTION "R" (4)
MINNESOTA

## ORDER AND REASONS

Before the Court is plaintiffs' motion *in limine* to exclude or, in the alternative, to limit the testimony of defendant's medical cost analysis expert, John Kocke.[1] Defendant opposes the motion.[2] For the following reasons, the Court denies the motion.

## I.   BACKGROUND

This case arises from a slip-and-fall. On November 14, 2017, plaintiffs, Lauren and Brett Abadie, went to the Target store in Houma, Louisiana.[3] Mrs. Abadie testified that, while walking down an aisle near the frozen foods section of the store, she tripped on a substance that appeared to be "melted

---

[1]   R. Doc. 48.
[2]   R. Doc. 53.
[3]   R. Doc. 3-6 at 3, ¶ 4.

vanilla ice cream."[4]  She states that she landed on her knee and injured herself.[5]

Following the accident, Mrs. Abadie received treatment from Dr. Brett Casey.[6] Medical records indicate that Mrs. Abadie underwent knee surgery—a "[r]ight knee lateral release"—on May 4, 2018,[7] and has also received several injections to treat her knee.[8] But Mrs. Abadie states that the surgery did not resolve her symptoms, and that her treating physician, Dr. Casey, has recommended future treatments.[9]

Plaintiffs represent that they will seek an award at trial for future medical expenses.[10] Plaintiffs received estimate quotes for three procedures which they contend are necessary: a total knee replacement, a MACI procedure, and "Euflexxa Injections."[11] In total, the quoted charges for all procedures is $177,785.39.[12] This consists of a facility charge, $142,968.39,

---

[4]   R. Doc. 31-6 at 25 (Lauren Abadie Deposition at 24:14-15).
[5]   *Id.* (Lauren Abadie Deposition at 24:13-14).
[6]   R. Doc. 31-13 at 1.
[7]   R. Doc. 31-15 at 1.
[8]   R. Doc. 31-6 at 47 (Lauren Abadie Deposition at 46:6-18).
[9]   *Id.* (Lauren Abadie Deposition at 45:4-46:18).
[10]  R. Doc. 48-2 at 1.
[11]  R. Doc. 53-1 at 1-4.  Although Dr. Casey's deposition testimony is not before the Court, the parties agree that Dr. Casey testified at his deposition that plaintiff will need either a total knee replacement or a MACI procedure, along with injections.  R. Doc. 48-2 at 2; R. Doc. 53 at 9.
[12]  *Id.*

from Physicians Medical Center,[13] and a non-facility charge, $34,817.00,[14] from Dr. Casey.

Defendant contends that the quoted charges are unreasonable. Defendant relies on the expert testimony of John Kocke, who performed a "Medical Bill Audit" of plaintiffs' quotes.[15] In his report, Kocke states that plaintiffs' quoted charges are unreasonable because they are inconsistent with the amounts medical providers charge or receive in payment for the relevant procedures.[16] Plaintiffs move to exclude Kocke's testimony as irrelevant.[17] The Court considers the parties' arguments below.

## II.   DISCUSSION

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000). Rule 702, which governs the admissibility of

---

[13]   *Id.* at 1.
[14]   *Id.* at 2-3. The non-facility charge includes $4,687.00 for three "Euflexxa" injections, and $30,130.00 for the total knee replacement and MACI procedure. *Id.*
[15]   R. Doc. 48-3 at 1-11.
[16]   *Id.*
[17]   R. Doc. 48.

expert witness testimony, provides that an expert witness "qualified . . . by knowledge, skill, experience, training, or education may testify" if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Plaintiffs challenge the relevance of Kocke's testimony, that is, whether it will help the jury understand the evidence or determine a fact in issue. *Id.* at 702(a); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) (noting that the condition of Rule 702(a) "primarily goes to relevance").[18] Plaintiffs do not challenge Kocke's qualifications, or his methodology. Defendant contends that Kocke's testimony is relevant, and therefore admissible, because it will assist the trier of fact in determining the reasonable value of Mrs. Abadie's future medical expenses in two ways: (1) Kocke's opinion includes a description of the "Usual, Customary[,] and Reasonable" ("UCR") charges for the relevant procedures in the Houma area,

---

[18] R. Doc. 48.

4

and (2) using "reimbursement rates," Kocke will testify that medical providers are paid significantly less for their services than the charged amount.[19]

Under Louisiana law, "[f]uture medical expenses must be established with some degree of certainty and must be supported with medical testimony *and [an] estimation of probable costs.*" *Tamayo v. Am. Nat. Gen. Ins. Co.*, 150 So. 3d 459, 470 (La. App. 5 Cir. 2014) (emphasis added). A plaintiff may be entitled to an award for future medical expenses even when "the record does not provide the exact value of the necessary expenses" as long as the Court can determine from the record "a minimum amount that *reasonable minds* could not disagree will be required." *Menard v. Lafayette Ins. Co.*, 31 So. 3d 996, 1006 (La. 2010) (emphasis added). As the U.S. Fifth Circuit has stated, "'an award for future medical expenses is in great measure highly speculative and not susceptible to calculation with mathematical certainty.'" *Berry v. Auto-Owners Ins. Co.*, 634 F. App'x 960, 964 (5th Cir. 2015) (quoting *Menard* 31 So. 3d at 1006). Thus, "fixing such awards generally 'turn[s] on questions of credibility and inferences, *i.e.,* whose experts and other witnesses does the jury believe?" *Id.*

---

[19]  R. Doc. 53 at 8-11.

As this Court noted in *Thomas v. Chambers*, No. 18-4373, 2019 WL 8888169, at *13 (E.D. La. Apr. 26, 2019), expert testimony regarding the estimated reasonable value of future medical treatment "is frequently introduced in state and federal courts." *Id.* at *13 n.84; *see also* 31 So. 3d at 1002 (noting that an expert witness testified as to the "value of [plaintiff's] future medical needs"); H. Alston Johnson, III, *Civil Jury Instructions*, in 18 Louisiana Civil Law Treatise § 18:5 (3d ed. 2020) (providing model jury instructions for "[m]edical expenses," including the charge that "[the jury] should consider the evidence, and the opinions of expert witnesses, to decide the *reasonable value or expense* of medical . . . treatment which . . . will be reasonable and necessary for plaintiff's condition" (emphasis added)).

Kocke's testimony as to the UCR charges is relevant to determining the reasonable costs of plaintiffs' future medical treatment, if the jury finds such treatment necessary. The UCR, as Kocke explains in his report, is defined by the Center for Medicare and Medicaid Services ("CMS") as "[t]he amount paid for a medical service in a geographic area based on what providers in the area usually charge for the same or similar medical service."[20] Kocke's report contains a range of UCR charge values—the 50th, 75th, and 100th percentile—for each of the procedures plaintiffs contend will be necessary.

---

[20]    R. Doc. 48-3 at 2 (emphasis added).

Kocke opines that the "reasonable value" of the procedures plaintiffs seek are within the range of the 50th to 75th percentile UCR rate.[21] In sum, Kocke contends that the reasonable facility charge for all procedures is between $33,562.17 to $50,343.25, and that the reasonable charge for the non-facility fees should be between $10,496.56 and $15,744.81.[22] By contrast, plaintiffs' quote for the facility fee is $142,968.39, and their quote for the non-facility fees is $34,817.00.[23]

The Court finds that Kocke's testimony as to the UCR rates will assist the trier of fact in determining the reasonable value of Mrs. Abadie's future medical treatment. *See McCuller v. Nautical Ventures, LLC*, No. 05-1195, 2012 WL 12986715, at *2 (E.D. La. June 6, 2012) (finding that the cost of the plaintiff's "future medical expenses shall be calculated using the usual and customary charges" rather than the "discounted cost of care with which [the plaintiff] ha[d] been provided to date"). The UCR charges described in the

---

[21] In his report, Kocke's sets out specific values that, he contends, are the "[r]ange of [f]air and [r]easonable" charges for the relevant procedures. R. Doc. 48-3 at 3. For the facility fees, his estimates are as follows: (1) for the total knee replacement, $21,633.31 to $32,449.97; (2) for the MACI procedure, $9,305.84 to $13,958.75; (3) for the Euflexia injections, $2,623.02 to $ 3,934.53. For the non-facility fees, his estimates are: (1) for the total knee replacement, $3,876.23 to $5,813.34; (2) for the MACI procedure, $4,726.24 to $7,089.36; and (3) for the injections, $1,894.10 to $2,841.11.

[22] R. Doc. 48-3 at 9.

[23] *Id.*

7

report, Kocke notes, are "the average or usual charges of medical providers in the specific . . . geographical zip code area."[24] Such information is relevant to determining a reasonable value of Mrs. Abadie's future medical treatment.

As noted, defendant also seeks to introduce Kocke's testimony regarding "reimbursement rates" to argue that the amount *billed* by medical providers is not representative of the amount ultimately *paid* for their services. Specifically, in his report, Kocke states that the payments a provider receives "have almost no relationship to the charge[d amount] and are significantly lower."[25] For example, Kocke states, at Physicians Medical Center of Houma—the facility that provided plaintiffs' quote—the average charges for a knee replacement surgery are $57,419, while the average payment for that service is $18,192.[26]

Neither party cites caselaw discussing the relevance of "reimbursement rates" to the reasonableness of medical charges. In the context of awards for medical treatment, courts have found such evidence admissible. For example, in *Perez v. Boecken*, No. 19-00375, 2020 WL 3074420, at *13 (W.D. Tex. June 10, 2020), the plaintiff moved to strike or limit the testimony of an

---

[24]  Kocke states that the primary "research tool[]" he used to derive these figures is CMS's data.
[25]  R. Doc. 48-3 at 2.
[26]  *Id.* at 8.

8

expert, who was expected to opine that plaintiff's estimated charges for a medical procedure were excessive compared to usual or customary payments. *Id.* The *Perez* court denied the plaintiff's motion, holding that testimony regarding usual and customary payments by Medicare and commercial health insurance companies is admissible under Rule 702. *Id.* Similarly, in *Berman v. Sink*, No. 13-597, 2016 WL 8730672, at *15 (E.D. Cal. May 27, 2016), the court denied a plaintiff's motion to limit expert testimony as to reimbursement rates for medical services, finding this information relevant to "determining the reasonable value of services in the marketplace."

The Court finds Kocke's testimony regarding reimbursement rates relevant for determining the reasonable value of plaintiff's future medical care. In short, the amount that medical service providers accept as payment, as compared to the amount they charge, is relevant to the question of how much plaintiff will pay for those services.

In their motion, plaintiffs challenge Kocke's conclusions as irrelevant because, in their view, their quoted price is the only evidence the jury should review as to the reasonable value of Mrs. Abadie's medical treatment.[27] Plaintiffs rely on cases applying Louisiana law which state that, in the context

---

[27] R. Doc. 48-2 at 4.

of *past* medical expenses, the trier of fact must award "the full amount of medical expenses that are proven by a preponderance of the evidence that were incurred as a result of an accident." *Antippas v. Nola Hotel Grp., LLC*, 265 So. 3d 1212 (La App. 4 Cir. 2019). But this rule, which requires that the jury award all medical costs actually incurred for medical procedures already performed, does not apply to *future* medical expenses. *See Thomas*, 2019 WL 8888169, at *13 n.84. Plaintiffs' reliance on cases discussing past medical treatment is misplaced. Moreover, Kocke's testimony challenges plaintiffs' position that the amount quoted is the amount they will actually incur. The Court finds that plaintiffs' argument—that Kocke's testimony is irrelevant to whether their quoted prices are reasonable—lacks merit.

Additionally, plaintiffs argue that Kocke's testimony runs afoul of Louisiana's "collateral source rule."[28] Plaintiffs contend that Kocke's estimates include discounts from hypothetical collateral sources—Medicare or medical insurance.[29] In *Bozeman v. State*, 879 So. 2d 692, 693 (La. 2004), the Louisiana Supreme Court described the collateral source rule, stating that "a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff

---

[28]   *Id.* at 3.
[29]   *Id.*

10

from sources independent of the tortfeasor's procuration or contribution." As an evidentiary principle, the rule bars a party from introducing evidence "that a plaintiff has received benefits or payments from a collateral source independent of the tortfeasor's procuration or contribution." *Id.* at 699.

The collateral source rule is inapplicable here. Even assuming that the collateral source rule applies to evidence going to future medical needs, Kocke's testimony is not that plaintiffs' recovery should be reduced because of payment by an independent source. Instead, Kocke's report states that Dr. Casey's quoted price is unreasonable because it does not reflect the prevailing charge in the geographic area, or the payment that providers actually receive. *See Perez*, 2020 WL 3074420, at *13 (rejecting application of the collateral source doctrine to an expert's testimony that billed charges were excessive in light of actual billed charges). The Court finds that Kocke's testimony is not barred by the collateral source rule.

In sum, the Court finds that Kocke's testimony—both as to the UCR charges and the reimbursement rates providers receive—is relevant to determining the value of Mrs. Abadie's future medical treatment. Accordingly, the Court denies plaintiffs' motion *in limine*.

## III. CONCLUSION

For the foregoing reasons, plaintiffs' motion *in limine* is DENIED.

New Orleans, Louisiana, this __22nd__ day of June, 2021.

_____Sarah Vance_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE